## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

ETTA BARRE, individually and as )
Personal Representative of the Estate of )
Anthony Barre, Deceased, )
)
        Plaintiff, )
)
v. )      Case No. 12-CV-0507-CVE-TLW
)
STATE FARM FIRE AND CASUALTY )
COMPANY, )
)
        Defendant. )

## OPINION AND ORDER

Now before the Court is Defendant's Motion for Summary Judgment and Brief in Support (Dkt. # 46). Defendant State Farm Fire and Casualty Company (State Farm)[1] argues that it had a reasonable basis to delay payment of plaintiff's theft claim, because State Farm gathered evidence reasonably suggesting that plaintiff's claim could be fraudulent and further investigation was required before the claim could be settled. Plaintiff responds that State Farm unreasonably withheld payment on plaintiff's theft claim because there was no justifiable basis to State Farm for continue its investigation into plaintiff's theft claim.

### I.

Etta and Anthony Barre owned a 2001 Chevrolet Suburban, which was insured by State Farm. Dkt. # 46-5. On May 30, 2009, the vehicle was stolen and the theft allegedly occurred

---

[1] The parties refer to the defendant as "State Farm Insurance Company," "State Farm Automobile Insurance Company," and "State Farm Fire and Casualty Company." Defendant's corporate disclosure statement (Dkt. # 7) states that the true and correct legal name of the defendant is State Farm Fire and Casualty Company.

sometime between 1:00 a.m. and 5:00 a.m.  Dkt. # 46-3, at 12; Dkt. # 46-4, at 7.  Etta Barre claimed

that she returned home from a party at approximately 1:00 a.m. or 2:00 a.m. and went to bed shortly

thereafter, and that her husband, Anthony Barre, observed that the car was missing when he woke

up for work at approximately 5:00 a.m.  Etta Barre reported the loss to State Farm on the morning

of May 30, 2009.  Dkt. # 46-6, at 52.  State Farm opened an investigation into the claim and the

matter was initially referred to Princella Young of the Special Investigative Unit Claims Resolution

Team (SIUCRT).  Young obtained a report from the National Insurance Crime Bureau (NICB), and

the NICB report showed that the same vehicle had been reported stolen in 2004.  Id. at 50.  Under

the NICB guidelines, this is an indicator that an insurance claim is possibly fraudulent.  Dkt. # 57-6,

at 4.  Young sent a letter to the Barres requesting a theft affidavit and authorization to run credit

reports.  Dkt. # 46-8.  Etta Barre gave a recorded statement on June 10, 2009, and she confirmed that

her husband noticed that the vehicle was missing around 5:00 a.m.  Dkt. # 46-4, at 9.  She also stated

that the Barres owed about $6,000 on the vehicle, but she gave conflicting statements as to the

vehicle's mileage.[2]

On June 23, 2009, Young contacted Etta Barre and again requested a theft affidavit and

authorization for credit reports, and Etta Barre claimed that she had mailed the documents the

previous week.  Dkt. # 46-6, at 49.  However, Young had not received the documents by June 29,

2009, and she again contacted Etta Barre to request the documents.  Id.; Dkt. # 46-9.  Young faxed

the forms to the Barres' insurance agent, but Young noted in the claims log that the Barres' claim

---

[2]     She originally stated that the vehicle had 160,000 miles, but she subsequently claimed that
the vehicle had only 100,000 miles.  The resolution of this factual issue has no bearing on
the outcome of the pending motion, but State Farm notes plaintiff's conflicting statements
to the extent that they show that State Farm had a legitimate reason to investigate the value
of plaintiff's vehicle at the time of the alleged theft.  Dkt. # 71, at 3.

was proceeding slowly due to the insureds' failure to contact Young during work hours.  Dkt. # 46-6, at 48-49.  On June 30, 2009, Etta Barre faxed a theft affidavit to Young, but the affidavit was not signed by the titled owner of the vehicle, Anthony Barre.  Etta Barre sent a fully executed copy of the theft affidavit to Young the following day.  Id. at 47-48.  Young also received authorizations for credit reports on June 30, 2009, and she requested credit reports for Etta and Anthony Barre.  Id. The credit reports showed that both Etta and Anthony Barre had a history of late payments, and it also appeared that both Barres owed substantial amounts in installment loans.[3]  Dkt. # 46-10; Dkt. # 46-11.  Young believed that the credit reports revealed financial issues that required further investigation, and she referred the Barres' claim to the Special Investigation Unit (SIU) for claims handling.  Dkt. # 46-6, at 47.

State Farm assigned the Barres' claim to Genesis Edwards for further review, and Edwards sent a letter to the Barres to advise them that she would be handling the theft claim.  On July 10, 2009, Edwards called Etta Barre to obtain more information about her credit history, and Etta Barre claimed that many of the delinquent accounts actually belonged to her daughter.  Dkt. # 46-6, at 43. Edwards also spoke to Anthony Barre about his credit history, and he explained that he had made arrangements with his bank to make up late payments on a mortgage for rental property.[4]  Id.  He

---

[3]       The Court notes that plaintiff disputes whether she actually owed any amount for installment loans.  Dkt. # 57, at 6.  However, plaintiff's credit rating is relevant only to the extent that it gave rise to a need for further investigation by State Farm, and the evidence shows that State Farm would have continued its investigation based on information contained in Anthony Barre's credit report only.  Thus, any misinterpretation of plaintiff's credit report by State Farm would not preclude summary judgment.

[4]       During a subsequent examination under oath (EUO), Anthony Barre stated that the bank stopped taking an automatic withdrawal but he was unaware that the automatic withdrawal had ceased.  Dkt. # 57-2, at 4-6.  There is no evidence that he provided this information to State Farm on July 10, 2009.

stated that he had been injured but that he had returned to work about three or four months earlier, and he claimed that he was unaware of any other inquiries listed on his credit report. Id. at 43-44. Edwards requested the Barres' banking records for the prior six months to ensure that the credit report was accurate, and Etta Barre faxed the records to Edwards on July 13, 2009. Dkt. # 46-7, at 13; Dkt. # 46-13. Edwards reviewed the bank records and could not find any payments for the rental property, and she noticed other inconsistencies with the Barres' statements on July 10, 2009. On July 14, 2009, Edwards called the Barres to go over the bank records, but Etta Barre screamed at Edwards and hung up. Dkt. # 46-6, at 43. Edwards received a call from Anthony Barre later on July 14, 2009, and he explained that the bank had foreclosed on the rental property. Anthony Barre also stated that he had been on disability and he got behind on certain accounts, but he returned to work and banking records verified his claims that the Barres had taken care of debts listed on his credit report. Id. at 42. Edwards concluded that the Barres were making payments to creditors and that "there appears NOT to be a financial struggle" that would give rise to a suspicion that the theft claim was fraudulent. Id. at 41-42. Edwards referred the claim to the Central Total Loss Unit (CTLU) for payment. Id. at 41.

State Farm prepared drafts for the lienholder, Tulsa Teachers Credit Union (TTCU), and the Barres, and State Farm contacted Anthony Barre on July 16, 2009 to notify him of the settlement. During the conversation with Anthony Barre, he stated that he had been separated from his wife and he said "did I put my foot in my mouth . . . ." Id. at 38; Dkt. # 46-7, at 16. Edwards spoke to her team manager, Valerie Hampton, and Edwards directed CTLU to put a hold on the payments to the Barres and TTCU. SIU determined that the residency issue had to be resolved before the payments would be issued, because Anthony Barre could have not discovered that the vehicle was missing if

4

he did not actually live with his wife on the date of the alleged theft. Dkt. # 46-7, at 7.  On July 20, 2009, Edwards spoke to Etta Barre concerning her husband's statement that the Barres were separated, and Etta Barre screamed at Edwards and hung up.  Dkt. # 46-6, at 37.  Edwards and Hampton discussed the Barres' theft claim and determined that it was necessary to take EUOs of Etta and Anthony Barre.  Id.; Dkt. # 46-7, at 18-19.  On July 22, 2009, Etta Barre called State Farm and asked to speak to Edwards' manager, and Edwards forwarded the message to Hampton.  Dkt. # 46-6, at 36.  Hampton spoke to Etta Barre and advised her that State Farm was requesting an EUO of Etta Barre and her husband, and Etta Barre contacted the customer service department following the conversation with Hamption.  Dkt. # 46-17.  Edwards contacted an attorney, Eileen Morris, and Morris agreed to conduct the EUOs sought by State Farm.  Dkt. # 46-6, at 35.  On July 23, 2009, Edwards also called Anthony Barre to clarify certain matters on his credit report, but he claimed to be unaware of any credit problems and he ended the call without answering Edwards' questions.  Id. at 34.  Etta Barre called back about five minutes later and "got excited exclaiming she has never been treated this way and hung up again."  Id.

Edwards sent a letter advising the Barres that Morris would be conducting their EUOs on behalf of State Farm.  Morris attempted to contact the Barres and she was able to speak to Anthony Barre.  Dkt. # 46-19.  Morris advised him that he could retain an attorney for the EUO and that he would need to bring certain documents to his EUO.  Id. at 32.  Anthony Barre also stated that he was separated from his wife and he was staying with his father.  Id.  Morris suggested possible dates for the EUOs and she selected a date based on the information provided by Anthony Barre.  Id.  The EUOs were scheduled for August 10, 2009, but neither of the Barres appeared.  Dkt. # 46-6, at 31.  Etta Barre claimed that she did not receive a letter from Morris about the scheduling of an EUO.

Dkt. # 46-20.  Morris made additional attempts to reschedule the EUOs of Etta and Anthony Barre, but they would not return Morris' calls.  Dkt. # 46-21.  Morris sent the Barres a letter advising them that their failure to provide documentation and appear for an EUO was delaying resolution of the theft claim.  Id.  Morris received some of the documents she had requested from the Barres and she sent them a letter explaining what documents remained to be produced before the EUOs could take place.  Dkt. # 46-22.  By October 6, 2009, Morris still had not received all of the documents she had requested from the Barres, and she advised the Barres that their delay in participating in an EUO was preventing completion of State Farm's investigation.  Dkt. # 46-24.

On October 7, 2009, the Barres provided nearly all of the information sought by Morris, and Morris scheduled the EUOs of the Barres for November 4, 2009, to accommodate Etta Barre's work schedule.  Dkt. # 46-27.  The Barres appeared for their EUOs on November 4, 2009, but Etta Barre halted her EUO after two hours and refused to proceed without her attorney present.  Dkt. # 46-3, at 8-10.  Morris asked to have Etta Barre provide a letter of representation from her attorney, and Morris terminated the EUO at Etta Barre's request.  Id. at 10.  Morris sent the Barres a letter confirming that they had stopped the EUO and that Morris would wait for a letter from the Barres' attorney before attempting to reschedule the EUOs.[5]  Dkt. # 46-28.  Morris spoke to Edwards about the information that Etta Barre did provide during the EUO, and she noted that it was unclear if the Barres were residing together at the time of the alleged theft.  Dkt. # 46-6, at 30.  Edwards requested that a mobile canvass worker be sent to the addresses listed for the Barres to confirm their residency.  Id. at 27.  Morris made two attempts to contact the Barres because she had not heard from the Barres' attorney but, on December 15, 2009, Morris received a letter from Steven Hightower stating

---

[5]     The EUO of Anthony Barre did not begin on November 4, 2009.

that he represented the Barres. Dkt. # 46-30.  Hightower asked that, based on discussions with Morris, the EUOs of the Barres be rescheduled for some time after the holidays.  Id.  On January 12, 2010, Hightower sent Morris a letter requesting that the EUOs be set on January 18, 2010 or later, and Morris scheduled the EUOs for January 19, 2010.  Dkt. # 46-31; Dkt. # 46-32.  At Morris' request, the EUOs were rescheduled for February 18, 2010, and the EUOs were completed on that date.  Dkt. # 46-33; Dkt. # 46-2; Dkt. # 46-3.  After discussing the EUOs with Morris, Edwards determined that additional investigation was necessary to establish the Barres' residency on the date of the theft and the condition of the insured vehicle.  Dkt. # 46-6, at 24.  Morris also requested additional records from the Barres after the EUO, and she received the documents on March 2 and 9, 2010.  Dkt. # 46-37.  On March 18, 2010, Morris sent an e-mail to Edwards advising State Farm "that this claim should be placed in line for payment."  Dkt. # 46-39.  Edwards updated the claims log on March 19, 2010 and noted that "all indicators [of fraud] have been resolved, and Edwards referred the claim to CTLU for payment.  Dkt. # 46-6, at 21.

On March 22, 2010, State Farm attempted to contact the Barres to discuss the settlement of their theft claim, but they were unable to reach the Barres.  Id. at 17-18.  Etta Barre called State Farm on March 29, 2010 and the settlement was explained to her, but State Farm advised her that Anthony Barre's name was on the title and he would have to sign all of the paperwork to process the settlement.  Id. at 16-17.  State Farm did not hear from Anthony Barre and they left messages with the Barres' attorney on April 6, April 27, May 11, and May 24, 2010, and they sent Anthony Barre letters on May 11 and June 11, 2010, asking him to contact State Farm about the settlement. Id. at 11-15; Dkt. # 46-40; Dkt. # 46-41; Dkt. # 46-42.  Unknown to State Farm, Anthony Barre had died on April 30, 2010 of complications from surgery, and neither Etta Barre nor her attorney

advised State Farm of Anthony Barre's death. Dkt. # 57-1, at 5. On June 29, 2010, Hightower sent a letter to State Farm claiming that he received only one letter on June 11, 2010 and a phone message on June 24, 2010, and he requested updated settlement documents from State Farm. Dkt. # 46-43. State Farm received the letter on July 2, 2010 and faxed the documents to Hightower on the same day. Dkt. # 46-6, at 9. Hightower did not respond and State Farm left messages for him on July 19 and 27, 2010. Id. Hightower called State Jarm on July 29, 2010 to advise State Farm that insurance premiums were still being deducted, but he did not discuss the terms of the settlement with State Farm. Id. at 8. State Farm issued a premium refund and Hightower acknowledged receipt of the refund on August 27, 2010. Id. at 6.

State Farm agreed to send a mobile worker to meet with Etta Barre at her place of employment, but Etta Barre advised State Farm that she had lost the title to the vehicle. Id. at 5. On September 7, 2010, Etta Barre notified State Farm that she had obtained a title and she requested reimbursement for expenses incurred in obtaining a replacement title. Id. at 3. She claimed that State Farm had already required her to submit the title and that State Farm should be responsible for the cost of a replacement title. Dkt. # 57-1. Hightower called State Farm and argued that State Farm should pay for the replacement title, and then he "got upset with [the State Farm representative] and said that he was done with [State Farm] and hung up." Id. at 2-3. State Farm issued a settlement check to Etta Barre and she accepted the settlement on September 14, 2010. Id. at 2.

On April 28, 2011, Etta Barre, on behalf of herself and as personal representative of the Estate of Anthony Barre, filed this case alleging that State Farm breached its duty of good faith and fair delaying by delaying payment of the theft claim. Dkt. # 3-1. The original petition identified the defendant as "State Farm Insurance Company." Id. Etta Barre filed an amended petition

8

alleging claims against State Farm Fire and Casualty Company.  Dkt. # 3-3.  Defendant removed the case to federal court on September 11, 2012, after Etta Barre clarified that she was seeking more than $75,000 in damages.

**II.**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317.  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law." Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

## III.

Defendant argues that it had a legitimate basis to withhold payment on plaintiff's theft claim, because there were indicators suggesting that the claim was fraudulent and plaintiff and her husband refused to cooperate with defendant's investigation.  Dkt. # 46, at 20-27.  Plaintiff responds that she and her husband were "entirely cooperative" with State Farm's investigation, and State Farm acted in bad faith by withholding payment when no evidence supported its decision to conduct a fraud investigation.[6]  Dkt. # 57, at 5.

Under Oklahoma law, "an insurer has an implied duty to deal fairly and act in good faith with its insured." Christian v. Am. Home Assurance Co., 577 P.2d 899, 904 (Okla. 1977).  Violation of this duty gives rise to an action in tort.  Id.  "The essence of the tort of bad faith, as it is recognized in Oklahoma, is the unreasonableness of the insurer's actions." Conti v. Republic Underwriters Ins. Co., 782 P.2d 1357, 1360 (Okla. 1989).  The Oklahoma Supreme Court and the Tenth Circuit have made clear that an insurer does not subject itself to a claim of bad faith merely by disputing coverage.  "The insurer does not breach the duty of good faith by refusing to pay a claim or by litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or amount of the claim, and the insurer's position is 'reasonable and legitimate.'" Thompson v. Shelter

---

[6]     Plaintiff argues that defendant misstates Oklahoma law concerning the insurer's duty of good faith and fair dealing, and she asks the Court to deny defendant's motion for summary judgment on this basis alone.  Dkt. # 57, at 24.  Even if plaintiff were correct that defendant had misstated law, this is not a basis for denial of a motion for summary judgment and the Court will independently review the Oklahoma law applicable to plaintiff's claim.

Mut. Ins., 875 F.2d 1460, 1462 (10th Cir. 1989) (citing Manis v. Hartford Fire Ins. Co., 681 P.2d

760, 762 (Okla. 1984)).  To make a prima facie case against an insurance company for bad faith

delay in payment of a first-party claim, a plaintiff must establish:

> (1) claimant was entitled to coverage under the insurance policy at
> issue; (2) the insurer had no reasonable basis for delaying payment;
> (3) the insurer did not deal fairly and in good faith with the claimant;
> and (4) the insurer's violation of its duty of good faith and fair
> dealing was the direct cause of the claimant's injury. The absence of
> any one of these elements defeats a bad faith claim.

Beers v. Hillory, 241 P.3d 285, 292 (Okla. Civ. App. 2010).  Plaintiff has the burden of proof on

each element of a bad faith claim.  Garnett v. Government Employees Ins. Co., 186 P.3d 935, 944

(Okla. 2008).  In cases concerning the delay of payment while an insurer conducts an investigation,

a court should consider whether "the insurer has constructed a sham defense to the claim or has

intentionally disregarded undisputed facts supporting the insured's claim." Timberlack Const. Co.

v. U.S. Fidelity & Guar. Co., 71 F.3d 335, 345 (10th Cir. 1995) (quoting Oulds v. Principal Mut.

Life Ins. Co., 6 F.3d 1431, 1442 (10th Cir. 1993)).

 In ruling on defendant's motion for summary judgment, the Court has reviewed the cases

cited by the parties and the Court finds that one case cited by plaintiff, Beers, provides a method of

analysis that is helpful.  In Beers, the Oklahoma Court of Civil Appeals was asked to determine

whether the trial court properly granted summary judgment to an insurer in a bad faith case arising

out of an alleged delay in payment of a claim, and the appellate court considered whether an insurer

had a good faith belief for withholding payment at each stage of its investigation.  See Beers, 241

P.3d at 292-93.  In this case, the Court finds that State Farm's investigation into plaintiff's theft

claim had three primary stages:

- May 30, 2009 (filing of theft claim) until July 14, 2009 (claim sent to CTLU for payment)

- July 16, 2009 (notice of separation) until March 19, 2010 (completion of EUOs)

- March 20, 2010 until payment of claim

The Court will consider whether there is a genuine dispute of material fact at each stage of the investigation that would preclude the entry of summary judgment in favor of defendant.

The first stage of defendant's investigation began upon receiving notice of plaintiff's theft claim and continued until the decision to withhold payment upon receiving new evidence that Anthony Barre may not have been residing with plaintiff at the time of the alleged theft. The mere fact that State Farm initiated a fraud investigation is not evidence of bad faith, because Edwards testified in her deposition that all theft claims were reviewed by SIU for indicators of fraud. Dkt. # 57-3, at 12. State Farm obtained a NICB report, and the report indicated that the vehicle had previously been stolen in 2004. Dkt. # 46-6, at 50. Edwards requested that a theft affidavit and authorization for credit report be sent to the insureds on June 3, 2009, but she did not receive fully executed documents from the insureds until June 30, 2009. The period of delay between June 3 and 30, 2009 is not attributable to any bad faith conduct by State Farm, because State Farm was waiting for the insureds to provide information that was necessary for resolution of their insurance claim. Edwards' initial investigation into plaintiff's and her husband's credit history also provided a reasonable basis for additional investigation into whether they had a financial motivation to submit a fraudulent claim. Specifically, plaintiff and her husband had a history of late payments and the credit reports revealed that plaintiff and her husband were several months behind on mortgage payments. Dkt. # 46-6, at 47. This initial stage of the investigation lasted approximately six weeks, and this is a reasonable amount of time to conduct an investigation when indications of fraud are

12

present.  When State Farm received information suggesting that the insureds had a possible motivation to submit a fraudulent claim, State Farm contacted the insureds for additional information and resolved any doubts in favor of the insured, and State Farm decided to settle the claim with its insureds on July 14, 2009.  There is no evidence of bad faith during the initial stages of State Farm's investigation into plaintiff's insurance claim.

The second stage of the investigation concerned defendant's request for plaintiff and her husband to submit to EUOs following Anthony Barre's representation on July 16, 2009 that he did not continuously reside with his wife and his statement that he "put [his] foot in [his] mouth . . . ." Dkt. # 46-6, at 38.  Anthony Barre was the person who allegedly discovered the vehicle missing on the day of the theft, and it would be a substantial indicator of fraud if he did not actually reside with his wife at that time.  Edwards attempted to follow up on this information with Etta Barre, and she "started screaming and stated to ask her husband everything."  Id. at 37.  Instead of working with Edwards to clarify a possible misunderstanding, Etta Barre immediately became uncooperative and State Farm could reasonably have considered this as a factor lending some weight to the appearance of fraud.  State Farm asked the insureds to submit to EUOs to clear up the residency issue, and this was reasonable under the circumstances.  Etta Barre initially refused to communicate with Morris to schedule an EUO and, when she appeared for an EUO on November 4, 2009, she halted the EUO to consult with her attorney.  Etta Barre had a right to retain an attorney and there is no evidence suggesting that State Farm or Morris made an adverse inference against plaintiff for this decision, but plaintiff cannot hold State Farm accountable for the delay caused in rescheduling her EUO.  It took several months to reschedule the EUO, in part, to accommodate plaintiff's counsel's schedule, and there is no evidence suggesting that Morris or State Farm acted with the intent to delay the

13

investigation.  State Farm had a justifiable reason to ask its insureds to submit to EUOs and much of the delay in obtaining the EUOs was the result of the insureds' refusal to cooperate, and the Court finds no evidence of bad faith for any delay in the investigation caused by a delay in completing the EUOs of the insureds.

The final stage of the claims handling process concerns the delay following State Farm's decision to settle with its insured after completion of the EUOs.  Plaintiff argues that payment should have been issued immediately after Morris recommended that the theft claim be paid and any delay after March 19, 2010 was unjustified.  Dkt. # 57, at 25.  However, plaintiff overlooks the evidence in the record clearly showing that State Farm was willing to settle claim and the insureds' failure to communicate with State Farm was the cause of any delay in payment.  State Farm spoke to Etta Barre on March 29, 2010 and explained that Anthony Barre would have to sign certain documents, and the insureds failed to submit the necessary paperwork to State Farm.  Dkt. # 46-6, at 16-18. Anthony Barre died on April 30, 2010 and it is reasonable to assume that plaintiff had other matters to deal with after his death, but she does not explain why she failed to communicate with State Farm between March 29 and April 30, 2010 to resolve the insurance claim.  After March 29, 2010, State Farm did not hear from plaintiff or her attorney until June 29, 2010, even though State Farm repeatedly attempted to contact plaintiff, and this delay is not evidence of bad faith.  After June 29, 2010, plaintiff's attorney was somewhat slow in responding to State Farm's inquiries and he raised an issue about the refund of premiums, and the final settlement of the insurance claim was delayed while the refund issue was resolved.  Id. at 6-8.  On September 7, 2010, plaintiff advised State Farm that she could not find the title for the vehicle and there was a short delay in payment while plaintiff obtained a replacement title.  Id. at 5.  Plaintiff then disputed whether State Farm was obligated to

14

pay for the replacement title and this resulted in another short delay in payment. Id. at 3. Plaintiff was advised that the cost of the vehicle tag was already included on a pro-rated basis as part of the settlement and that State Farm would not pay for a replacement title. Id. at 3-4. Plaintiff's attorney contacted State Farm to argue for reimbursement of expenses related to the replacement title, and this briefly delayed settlement of plaintiff's insurance claim. Plaintiff's claim was settled on September 14, 2010. State Farm has offered a reasonable explanation for the delay following its decision to settle with its insureds on March 19, 2010, and the evidence shows that the insureds' refusal to communicate with State Farm was the primary cause on any delay during this final period of the claims settlement process.

The Court has reviewed the evidence in a light most favorable to plaintiff and finds that State Farm had a reasonable basis to investigate the theft claim and request additional information as the investigation progressed. Much of the delay in payment of the claim was directly attributable to the insureds' refusal to provide necessary documents or cooperate with State Farm's investigation, and the mere fact that the investigation took over a year does not independently support a finding of bad faith against State Farm. Plaintiff has not shown that State Farm violated its obligation of good faith and fair dealing with its insureds, and State Farm's motion for summary judgment should be granted.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment and Brief in Support (Dkt. # 46) is **granted**. A separate judgment is entered herewith.

**DATED** this 7th day of October, 2013.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

15